UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
Seth Shaw,

                          Plaintiff,

-against-

Empire Stock Transfer Inc.,

                          Defendant.
------------------------------------------------------------- X

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

18 Civ. 10349 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/19

ALVIN K. HELLERSTEIN, U.S.D.J.:

This diversity action arises out of a commercial dispute between Seth Shaw ("plaintiff") and the transfer agent for ROI Land Investments Ltd. ("ROI"), Empire Stock Transfer, Inc. ("Empire" or "defendant"). Plaintiff had contracted to provide marketing and public relations services to ROI in exchange for 500,000 shares of its stock, to be delivered by Empire. Plaintiff sues the transfer agent, alleging claims for conversion, unjust enrichment, imposition of a constructive trust, conspiracy, and aiding and abetting. Empire moves to dismiss the complaint. For the reasons that follow, defendant's motion is granted, with leave to amend.

## Background

The following facts are taken from plaintiff's complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a New York citizen. Compl. ¶ 1. Defendant is a Nevada corporation headquartered in Nevada. Compl. ¶ 2. ROI is a Nevada corporation headquartered in Montreal, Canada. Compl. ¶ 3.

The complaint alleges that plaintiff and ROI entered into a one-year consulting agreement, beginning in May 2014, pursuant to which plaintiff provided investor marketing and public relations strategy services. Compl. ¶ 7. In consideration for his services, plaintiff alleges that he was to receive 500,000 shares of ROI stock, restricted for one year but "fully earned and vested as of May 1, 2015" and "eligible to become unrestricted shares during May of 2015." Compl. ¶¶ 8–9, 11.

Although plaintiff alleges that he performed under the contract, ROI never delivered the share certificates. Compl. ¶ 12. The complaint alleges that on September 17, 2015, plaintiff contacted Empire, ROI's transfer agent, and that Empire emailed plaintiff an account statement confirming that plaintiff was issued 500,000 restricted shares. Compl. ¶¶ 13–15; Ex. B, ECF 1-2. Defendant responded that it mailed plaintiff's certificates to the Law Office of David Price ("Price"). Plaintiff alleges that Price did not represent him and is silent as to how and why the certificates were delivered to Price. Compl. ¶¶ 18, 20. Plaintiff allegedly contacted Price but learned from him that ROI had directed Price to return plaintiff's stock certificates to ROI. Compl. ¶ 21.

Plaintiff alleges that he demanded that Empire issue him a new certificate for 500,000 unrestricted shares and that he attached a Rule 144 opinion letter supporting the removal of the restrictive legend. Compl. ¶¶ 22–23; Ex. F, ECF 1-6. Plaintiff alleges that Empire, at the direction of ROI, cancelled plaintiff's shares in November 2015, that ROI disclosed the cancellation on August 15, 2016, and that plaintiff discovered the cancellation in January 2017. Compl. ¶ 27.

Plaintiff also alleges that he pursued the underlying dispute with ROI through arbitration, which resulted in an award for plaintiff of $861,859.57. Compl. ¶ 31. On March 1, 2018, the U.S. District Court of Nevada confirmed the arbitration award. Compl. ¶ 34.

Plaintiff alleges that he has been unable to recover on his judgment and that shares of ROI, in the meantime, have been delisted by the Securities and Exchange Commission ("SEC") and are now worthless. Compl. ¶¶ 35–36. But for defendant's failure to deliver the stock certificates to plaintiff, plaintiff alleges that he would have sold his shares in October 2015, when they still had value. Compl. ¶ 56. In a November 6, 2018 filing, ROI disclosed that, on October 30, 2015, it issued 90,000 shares of common stock to two investors for $135,000 and 622,667 shares of common stock to four investors for $934,000, corresponding to a share price of approximately $1.50. Ex H, ECF 1-8, at 15.

## Discussion

Defendant moves to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

While Nevada statutes confer rights on stockholders to be issued securities certificates and to the removal of the certificates' restrictive legend, plaintiff pleads only common law claims, particularly for conversion. Empire argues that plaintiff did not allege a proper claim to the shares, that his claim is precluded by the statute of limitations, and that his remaining claims suffer from other deficiencies. For the reasons stated in this opinion and order, I dismiss the complaint with leave to replead sufficient facts to support a statutory violation and entitlement to the removal of the restrictive legend. The balance of plaintiff's claims is duplicative and derivative of the statutory and conversion claims and are dismissed with prejudice.

### A. Plaintiff's Conversion Claim

#### 1. The Statutory Regime

Statutes govern a shareholder's entitlement to securities certificates, and his right to receive securities certificates with the restrictive legend removed is the essence of plaintiff's claim. The Uniform Commercial Code ("UCC") and Nevada law[1] provide that "every stockholder is entitled to have a certificate, signed by officers or agents designated by the corporation . . . , certifying the number of shares in the corporation owned by the stockholder." Nev. Rev. Stat. § 78.235. The statute provides that a transfer agent has the same obligation to

---

[1] The parties appear to assume that the law of Nevada, the place of ROI's incorporation, governs its obligations to issue or transfer securities certificates. *See DHC Resort, LLC v. Razorback Entm't Corp.*, 329 F.3d 974, 977 (8th Cir. 2003).

the shareholder to issue security certificates or register their transfer as the issuer, ROI. Nev. Rev. Stat. § 104.8407.

The U.C.C. § 8-401 and Nevada's parallel statute, Nev. Rev. Stat. § 104.8401, govern stock transfers and obligate the issuer to register transfer if certain conditions are met, providing:

> 1. If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer, pledge or release as requested if:
> (a) Under the terms of the security, the person seeking registration of transfer is eligible to have the security registered in his or her name;
> (b) The endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;
> (c) Reasonable assurance is given that the endorsement or instruction is genuine and authorized;
> (d) Any applicable law relating to the collection of taxes has been complied with;
> (e) The transfer does not violate any restriction on transfer imposed by the issuer in accordance with NRS 104.8204;
> (f) A demand that the issuer not register transfer has not become effective under NRS 104.8403, or the issuer has complied with subsection 2 of that section but no legal process or indemnity bond is obtained as provided in subsection 4 of that section; and
> (g) The transfer is in fact rightful or is to a protected purchaser.
>
> 2. If an issuer is under a duty to register a transfer of a security, the issuer is liable to the person presenting a certificated security or an instruction for registration or his or her principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

Nev. Rev. Stat. § 104.8401. The Nevada Supreme Court has held that § 104.8401(1) confers a cause of action for failure by transfer agent to remove a restrictive legend. *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 195 (Nev. 2014) ("The phrase 'request to register transfer' in NRS 104.8401(1) applies to a request to remove a restrictive legend from a person's

5

shares."); *see also Trans Energy, Inc. v. Abcouwer*, No. 1:14-cv-176, 2015 WL 3397774, at *8 (N.D.W. Va. May 26, 2015).

2. Common Law Remedies for Failure to Issue Shares with a Restrictive Legend

"[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)). Plaintiff alleges that he was entitled to stock certificates in the possession of defendant, and that defendant, by failing to deliver or reissue the certificates and by cancelling the shares, exercised dominion over the certificates to the exclusion of plaintiff.

In addition to claims for conversion, Nevada law "recognizes the existence of a claim for wrongful refusal to issue a stock certificate." *Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986) (citing cases). In *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 194–196 (Nev. 2014), the Nevada Supreme Court recognized that "[a]t common law, 'a transfer agent [could not] be held liable to a stockholder in damages for . . . failure to act to remove [restrictive] legends,' or refusal to register a requested stock transfer," *Kenler v. Canal Nat'l Bank*, 489 F.2d 482, 485 (1st Cir. 1973), but recognized that "'misfeasance,' as distinguished from nonfeasance, 'was at common law, and remains, a recognized basis for a lawsuit by a shareholder against a transfer agent," *Campbell v. Liberty Transfer Co.*, No. 02-cv-3084, 2006 WL 3751529, at *17 (E.D.N.Y. Dec. 19, 2006).

An allegation of conversion is, on its face, consistent with "misfeasance." Moreover, Nevada, by statute, has made a transfer agent's duty the same as that of an issuing

6

corporation. Nev. Rev. Stat. 104.8107; *Guilfoyle*, 335 P.3d at 194–95. Similarly, the fact that defendant was serving as agent to ROI and acting pursuant to its instructions does not absolve it of liability. Nev. Rev. Stat. § 104.8407; *see* Restatement (Third) Of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.").

There is nevertheless an issue whether the statutory regime governing the securities displaces any remedy available to plaintiff under the common law, but cases examining it have concluded that U.C.C. § 8-401 does not necessarily do so. *See, e.g.*, *Guilfoyle*, 335 P.3d at 194–99 n.5 (independently analyzing statutory, negligent and fraudulent misrepresentation, aiding and abetting, and conspiracy claims); *see also Campbell*, 2006 WL 3751529, at *17 ("[M]isfeasance was at common law, and remains, a recognized basis for a lawsuit by a shareholder against a transfer agent."); *Schloss v. Danka Bus. Sys., PLC*, No. 99-cv-0817, 2000 WL 282791, at *3–7 (S.D.N.Y. Mar. 16, 2000) (independently analyzing causes of action for § 8-401 violation, breach of contract, and conversion); *Trans Energy, Inc. v. Abcouwer*, No. 1:14-cv-176, 2015 WL 3397774, at *10 (N.D.W. Va. May 26, 2015); *but see Kolber v. Body Cent. Corp.*, 967 F.Supp.2d 1061, 1068 (D. Del. 2013) (Delaware § 8-401 displaces negligence claims); *Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1236 (Colo. 2008) (same). The courts in these cases considered both statutory and common law claims, and the courts analyzed additional claims within that context.

However, the claim in this case is derivative of plaintiff's statutory rights and would fail without adequate pleading them. The core of plaintiff's complaint is that defendant

7

failed to deliver to him securities certificates without a restrictive legend ("clear certificates"), preventing him from selling the shares. While the alleged mailing of plaintiff's securities certificates to another and their subsequent cancellation constitute misfeasance, the failure to deliver clear certificates—the crux of plaintiff's claim—constitutes nonfeasance and relies on plaintiff's statutory entitlement to the legend's removal. Plaintiff's claim is governed by statute. Such a claim may ultimately be plausible, and Empire's argument that plaintiff an entitlement to the shares, because of plaintiff's dispute with ROI, is inconsistent with defendant's own account statements, which confirm that plaintiff was issued shares of ROI and entitled to certificates, and with defendant's explanation that those certificates were in fact mailed.

I conclude that Plaintiff's conversion claim, as alleged, is thus incomplete and insufficient as a matter of law.

### B. The Statute of Limitations Does not Bar Plaintiff's Claims

Defendant also argues that plaintiff's claim is time barred by the three-year statute of limitations. C.P.L.R. § 214(3). Plaintiff's claim is timely. *See, e.g., MacDonnell*, 193 N.Y. 92, 101, 85 N.E. 801 (1908) ("The rule that one who comes lawfully into possession of property cannot be charged with conversion thereof, until after a demand and refusal, is too well established to justify extended discussion."). The complaint does not allege, and defendant does not show, that defendant refused to deliver plaintiff's stock certificates earlier than November 7, 2015. Rather, the complaint alleges only that defendant converted shares by cancelling them in the middle of November 2015, making plaintiff's claims timely.

## C. Plaintiff's Remaining Claims Are Dismissed

Plaintiff's remaining claims for unjust enrichment, a constructive trust, and aiding and abetting, and conspiracy are duplicative of his other claims and properly dismissed. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). This claim is unnecessarily duplicative of any claims arising in tort, contract, or under the statute. *See LG Capital Funding, LLC v. Ubiquity, Inc.*, 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) ("Where, as here, however, the 'matter is controlled by contract' and the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative.") (quoting *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014)). Here, plaintiff's entitlement to unrestricted ROI shares rests on his contract with ROI, and defendant's duties as ROI's transfer agent, which hare defined by statute.

Similarly, a constructive trust constitutes a remedy rather than a separate theory of liability, and, deriving from plaintiff's duplicative unjust enrichment theory, is also properly dismissed. *See In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004). Plaintiff's aiding and abetting claim similarly duplicates a statutory claim. Finally, "[i]t is textbook law that New York does not recognize an independent tort of conspiracy." *Sepenuk v. Marshall*, No. 98-cv-1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000). A conspiracy claim cannot confer further damages beyond the underlying tort, and, with a single defendant in this action, there is no basis for joint liability, and the claim is properly dismissed. *See id.*

### D. Leave to Amend

Plaintiff has requested leave to amend in the event that I grant defendant's motion to dismiss. District courts "ha[ve] broad discretion in determining whether to grant leave to amend," *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), and leave to amend should generally be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where the possibility exists that [a] defect can be cured, leave to amend should normally be granted." *Isaac v. City of New York*, No. 17-cv-1021 (PGG), 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018) (internal quotation marks removed) (citing *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991)).

Based on the current record, I cannot conclude that leave to amend the complaint would be futile. Accordingly, leave to amend the conversion claim and to add statutory claims is granted. Leave to amend the unjust enrichment, constructive trust, conspiracy, and aiding and abetting claims is denied.

## Conclusion

For the reasons stated, defendant's motion to dismiss the complaint is granted, with prejudice as to the unjust enrichment, constructive trust, and aiding and abetting claims, and with leave to amend and add a statutory claim to plaintiff's conversion claim. The oral argument previously scheduled for June 11, 2019 is unnecessary and is cancelled. Plaintiff shall file any amended complaint by June 18, 2019. The parties shall appear for an initial pretrial conference on July 19, 2019, at 10 a.m., to chart further progress in this case. The clerk is instructed to terminate the motion (ECF 11).

SO ORDERED.

Dated: May 23, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge